WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Robert Robinson, Jr.,            )
                                 )
            Plaintiff,           )
                                 )
        v.                       )        CV 04-2907 PHX VAM
                                 )
Jo Anne B.Barnhart,Commissioner,)        ORDER
Social Security Administration, )
                                 )
_____Defendant._____ )

Pending before the Court are plaintiff's Motion for Summary Judgment (Docs. 10,11 and 12) and defendant's Cross-Motion for Summary Judgment.  (Docs. 18,19 and 20).

**BACKGROUND**

Robert Robinson, Jr., ("plaintiff") filed for benefits under both Title II (disability) and Title XVI (supplemental security income) of the Social Security Act on January 18, 2002, alleging a disability onset date of March 9, 2001.  (Doc. 6A at pp. 60, 435).  Plaintiff was 60 years old at the time he filed his application for benefits.  (Id.).  A hearing was held before the Administrative Law Judge ("ALJ") on April 19, 2004.  Plaintiff and vocational expert Mark Kelman testified.  (Id. at pp. 458-83).  On June 21, 2004, the ALJ issued a written decision denying the application for benefits.  (Id. at pp. 16-28).  Plaintiff filed for review before the Appeals Council.  On October 19, 2004, the Appeals Council denied the application for review thereby

1   upholding the ALJ's decision as the decision of the Agency.  (Id.

2   at pp. 10-13).  On December 16, 2004, plaintiff filed this

3   application in the District Court challenging the Agency's denial

4   of social security benefits.  (Doc. 1).

**DISCUSSION**

I. General Statutory Authority

        42 U.S.C. §423(d)(1) defines disability as the "inability to

engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months

..."  In addition, subsection (d)(2)(A) provides:

>     An individual shall be determined to be under a
>     disability only if his physical or mental impairment or
>     impairments are of such severity that he is not only
>     unable to do his previous work but cannot, considering
>     his age, education, and work experience, engage in any
>     other kind of substantial gainful work which exists in
>     the national economy, regardless of whether such work
>     exists in the immediate area in which he lives, or
>     whether a specific job vacancy exists for him, or
>     whether he would be hired if he applied for work

Subsection (d)(3) of section 423 states:

>     ... a "physical or mental impairment" is an impairment
>     that results from anatomical, physiological, or
>     psychological abnormalities which are demonstrable by
>     medically acceptable clinical and laboratory diagnostic
>     techniques.

II. Standard of Review

        The Court must affirm the Commissioner's findings if the

findings are supported by substantial evidence in the record and

are free of legal error.  See Marcia v. Sullivan, 900 F.2d 172,

174 (9th Cir. 1990).  Substantial evidence means more than a mere

2

scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. See Reddick, 157 F.3d at 720; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  The ALJ is responsible for resolving conflicts, determining credibility, and resolving ambiguities. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Margallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. See Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). Therefore, if on the whole record before the Court substantial evidence supports the Commissioner's decisions, the Court must affirm it.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. §405(g).

Under the Social Security Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason  of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  An individual is determined to be under a disability if "his physical or mental impairment or impairments are of such severity that he is not only

3

unable to do his previous work but cannot, considering his age,
education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy."
42 U.S.C. §423(d)(2)(A).  The claimant bears the initial burden of
proving that he is disabled.  See 42 U.S.C. §423(d)(5); Reddick,
157 F.3d at 721.  If the claimant shows that he was unable to
perform past relevant work, the burden shifts to the Commissioner
to show that the claimant "can perform other substantial gainful
work that exists in the national economy." Reddick, 157 F.3d at
721.

An ALJ determines an applicant's eligibility for disability
benefits by following the five stages listed below:

(1) determine whether the applicant is engaged in
"substantial gainful activity;"

(2) determine whether the applicant has a "medically
severe impairment or combination of impairments;"

(3) determine whether the applicant's impairment equals one
of a number of listed impairments that the Commissioner
acknowledges as so severe as to preclude the applicant from
engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the
"listed impairments," determine whether the applicant is
capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his
or her past relevant work, determine whether the
applicant "is able to perform other work in the
national economy in view of his [or her] age,
education, and work experience."

See Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)(citing 20 C.F.R.
§404.1520(b)-(f)).  At the fifth stage, the burden of proof shifts
to the Commissioner.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th
Cir. 1993).

4

III. Hearing Testimony

Plaintiff testified he did not attend school beyond 10th grade but had a GED.  He testified he had not worked since March 9, 2001, after injuring the rotator cuff of his shoulder at work. (Doc. 6A at pp. 462-63).  Plaintiff testified this injury aggravated an injury to his neck which prevented his return to work after his rotator cuff injury healed.  (Id. at p. 463). Prior to this injury, plaintiff worked as a nurses aid, first in a nursing home and later for the Department of Corrections. Plaintiff also previously worked at a credit bureau between 1997 and 2000.  (Doc. 6A at p. 20).  He left that job after a sexual harassment claim was filed against him by a co-worker, but denies doing anything improper.  (Id. at p. 475-76).  His last job, from about June, 2000, until his injury in March, 2001, was as a truck driver for a waste management business.  (Id. at p. 474).

Plaintiff testified at the hearing he suffered from severe back pain (9 on a scale from 1 to 10).  (Doc. 6A at p. 466).  He stated he lies down "most of the time ... during the day" to help relieve the pain.  Plaintiff also testified he "can't get me a drink of water. I can't cook."  He testified he takes medication, including naproxin and neurontin.  (Id.).  Plaintiff states he can't sit, stand or walk for more than 30 or 40 minutes at one time due to his back pain.  (Id. at p. 467).

Plaintiff also testified about neck pain that "goes down to my left shoulder" causing "sharp pain" on occasion.  (Doc. 6A at p. 467).  Plaintiff stated he had neck surgery "where they fused some discs" in the past and was reluctant to have any more surgery

"because I've heard of people having surgery on their back and
having problems .... they get worse instead of better." (Id. at p.
469).

Plaintiff stated he does not work around the house.   He
volunteered that "[i]f I attempted to do dishes I would do a
portion at a time, and then I'd have to rest and then get back up
and do another portion.  Can't stand at the sink very long."
(Doc. 6A at p. 470).  Plaintiff also stated he doesn't prepare
meals except for in the microwave and further stated he didn't
drive because he doesn't have a car, but doubts he could drive and
has not tried to do so since March of 2001.  (Id.).

Plaintiff also testified he takes medication for depression.
He thinks he has been taking this medication for about a year (as
of April, 2004).  (Doc. 6A at p. 471).  In spite of taking
medication, plaintiff testified he still feels depressed.  He
cited the fact he could not work and had no money as a basis for
his depression, because he has worked all his life up until March,
2001.  (Id. at p. 472).

Vocational expert Mark Kelman also testified at the hearing.
Kelman stated plaintiff has no training as a certified nurses aid,
and probably worked as a nursing assistant.  Kelman testified that
the exertional level for the work plaintiff performed as a nursing
assistant with the Department of Corrections was limited to
distributing medication, taking vital signs and writing some
reports. (See Doc. 6A at p. 473).  Kelman characterized this work
as light and semi-skilled.  (Id.).  Kelman characterized
plaintiff's prior work as a nursing assistant in a nursing home as

"medium" and also semi-skilled.  (<u>Id.</u> at 473-74).  He also
characterized plaintiff's truck driving work as "medium" and semi-
skilled work.  (<u>Id.</u> at p. 477).  Kelman characterized plaintiff's
work at the credit bureau as "light" or "sedentary."  (<u>Id.</u>).

The ALJ asked Kelman to assume someone of plaintiff's age,
education and background who "can perform the exertional
requirements of light work ..."  Under these circumstances, Kelman
opined plaintiff could perform his past work as a nursing
assistant or as a credit clerk.  However, if plaintiff's testimony
that he cannot sit, stand or walk for more than 30 or 40 minutes
at a time is credited, Kelman concluded that plaintiff could not
perform the work of a nursing assistant but could still do the
work he performed at the credit bureau.  (Doc. 6A at pp. 477-78).
The ALJ acknowledged that if plaintiff is required to lie down for
a large portion of the day (say 4 hours in an 8 hour day) as he
testified, he could perform no work.  (<u>Id.</u> at p. 479).

<u>IV. ALJ's Decision</u>

In her decision denying plaintiff's application for benefits,
the ALJ determined that plaintiff satisfied the first three steps
of the five-part sequential evaluation.  (<u>See</u> Doc. 6A at p. 27).
However, at Step 3 the ALJ determined that although plaintiff's
physical maladies were "severe" they did not "meet or medically
equal one of the listed impairments" and, thus, before plaintiff
could be eligible for benefits, plaintiff must show he cannot
perform any past relevant work (Step 4).  If he cannot perform
past relevant work he still will not be entitled to benefits if
the Agency demonstrates he could perform other work in the economy

(Step 5).  The ALJ determined at Step 4 that plaintiff's physical injuries left him with a residual functional capacity to perform "light work as defined in the Regulations with a limitation in pushing and pulling with the lower extremities."  (Id. at p. 28). In addition, the ALJ concluded that plaintiff "is precluded from climbing ladders, ropes and scaffolds and limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling."  (Id.).  The ALJ determined that plaintiff's past relevant work as a nurses aid "did not require performance of work-related activities precluded by his residual functional capacity."  (Id.).  As a result, the ALJ determined that plaintiff's physical condition does "not prevent [him] from performing his past relevant work as a certified nurses aide and credit clerk supervisor" and he was, therefore, not disabled. (Id.).

In reaching her determination of not disabled at Step 4, the ALJ concluded, inter alia:

> ... [plaintiff's] allegations concerning his symptoms and limitations [are] lacking in credibility.  Although [he] testified to a reduced range of activities, as well as debilitating episodes of pain, the documentary evidence nevertheless establishes [plaintiff] has overstated his limitations.  His statements concerning his impairments and the impact upon his ability to work are not entirely credible in light of the degree of medical treatment required, the reports of the treating practitioners, the medical history, findings made on examination and information reported by [petitioner].

(Doc. 6A at p. 24).

In particular, the ALJ noted that although plaintiff contends he suffered from "severe and chronic pain," in his neck, lower back, shoulder and arm, the medical evidence "revealed a

mild L1 compression fracture of unknown acuity and some lumbar osteoarthritis." (Doc. 6A at p. 24). The ALJ also noted that for these impairments plaintiff was treated with physical therapy and medication. In addition, the ALJ observed that "[m]agnetic resonance imaging revealed a tear of the supraspinatus tendon and [plaintiff] underwent a right shoulder open rotator cuff repair ... with good results" and plaintiff testified "he did not experience right shoulder problems following surgery." (Id.). The ALJ further noted that plaintiff's treating physician "allowed him to return to light duty work with the right arm with no lifting of over 20 pounds and no overhead activity with the right arm." (Id.).

V. Analysis

This case turns upon plaintiff's credibility. The ALJ determined that plaintiff suffered from severe impairments capable of causing pain. Both parties conceded at oral argument that credibility was key. The Government's vocational expert stated that if plaintiff's pain testimony is credited, plaintiff cannot work and is entitled to disability.

In Moisa v. Barnhart, 367 F.3d 882 (9th Cir. 2004), cited prominently by plaintiff, the Ninth Circuit stated:

> "[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." If the ALJ finds claimant's pain testimony not to be credible, the ALJ "must specifically make findings that support this conclusion," and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit

the claimant's testimony."  If there is no affirmative
evidence that the claimant is malingering, the ALJ must
provide clear and convincing reasons for rejecting the
claimant's testimony regarding the severity of
symptoms.

Moisa, 367 F.3d at 885.

Here, as in Moisa, the ALJ found that plaintiff suffered
from a series of severe impairments capable of causing pain.
Specifically, the ALJ found that plaintiff suffered from
"degenerative disc disease of the lumbar spine, with spondylosis,
degenerative disc disease of the cervical spine with stenosis,
right rotator cuff tear status post surgery (June 2001), asthma
and diabetes, impairments that are 'severe' within the meaning of
the Regulations, ..."  (Doc. 6A at p. 21).  The ALJ also noted
that through the years plaintiff has had numerous surgeries for
his impairments and been under some type of professional treatment
on a constant basis.  (See id. at pp. 21-22).

Plaintiff argues that the ALJ's basis for rejecting his
credibility did not meet the legal standard.  Specifically,
plaintiff contends the ALJ employed the wrong standard of review
because in addition the citing "specific" reasons for discounting
plaintiff's credibility, she must also provide clear and
convincing evidence in the absence of evidence of malingering.
Second, plaintiff contends the ALJ "ignor[ed] ... the requirement
to identify what testimony is not considered credible and what
evidence undermines that testimony."  In addition, plaintiff
contends the ALJ "focuses on irrelevancies" such as plaintiff's
report of improvement after he had shoulder and hernia surgeries
"because [plaintiff's] spinal impairments were the primary basis

1  for disability."   (Doc. 21 at pp. 3-4).

2       As noted, because the medical evidence indicates plaintiff

3  suffers from "severe" impairments that can cause pain, and in the

4  absence of malingering, the ALJ could only discount plaintiff's

5  pain and symptom testimony with specific evidence that is also

6  clear and convincing.   Plaintiff's subjective complaints

7  concerning his level of pain may not be rejected simply by saying

8  they are not supported by the objective medical evidence.   See

9  Moisa, 367 F.3d at 885.

10      In Moisa, the Court touched on the type of evidence which

11 may be relied on to satisfy the "clear and convincing" standard

12 necessary to reject plaintiff's pain testimony as lacking in

13 credibility.   Barring evidence of malingering, and the ALJ found

14 no such evidence in this case, the ALJ could discount plaintiff's

15 pain testimony by showing evidence of his "reputation for

16 dishonesty, conflicts between [his] testimony and his conduct, or

17 internal contradictions in the testimony."   See Moisa, 367 F.3d at

18 885.

19      In an attempt to do this, the ALJ noted plaintiff "reported

20 inconsistencies regarding his education."   (Doc. 6A at p. 26).

21 Specifically, the ALJ observed that in his hearing testimony

22 plaintiff stated he only completed the tenth grade but that he

23 told Dr. Huddleston, a psychologist who examined him on behalf of

24 the State, that he completed his high school education.

25      In addition, the ALJ cited numerous inconsistencies between

26 plaintiff's hearing testimony (where he claimed he suffered from

27 pain on a level of nine out of possible ten scale) and evidence

28                                  11

showing on several occasions he described his pain to others as much less severe or virtually non-existent.

The ALJ cited inconsistencies between plaintiff's claims of pain at the hearing and his treatment and medical history which the ALJ interpreted as showing plaintiff did not claim pain as severe as that to which he testified. (Doc. 6A at p. 25). In particular, the ALJ noted that although plaintiff testified at the hearing that his pain was nine on a ten scale, "he has not reported this level of pain to treating medical professionals. On numerous occasions he has reported no pain or mild to moderate pain." (Id.). The ALJ also found that plaintiff's description of his limited daily activities were not consistent with the objective medical evidence. (Id. at p. 26).

Finally, the ALJ found "inconsistencies" concerning plaintiff's statements concerning his level of education to be troubling and indicative of a credibility problem. The ALJ noted that plaintiff testified at the hearing he only completed the tenth grade and obtained a high school equivalency diploma. However, he told an examining psychologist, Dr. Huddleston, that he completed his high school education. The ALJ also states he made similar statements to his "treating physician. (Doc. 6A at p. 26).

The Court finds the ALJ's description of plaintiff's alleged "inconsistencies" concerning his education level not persuasive. The only difference cited is whether plaintiff was a high school graduate or obtained an equivalency diploma. This distinction is not great and is hardly indicative of a reputation for dishonesty.

Similarly, the Court discounts the ALJ's assertion that plaintiff's statements about his restricted daily activities are not credible because the ALJ utterly fails to provide specifics. The ALJ does not identify what statements by plaintiff on this point are inconsistent.

The ALJ's findings concerning inconsistencies between plaintiff's hearing testimony about his level of pain (9 out of 10 requiring him to spend significant amounts of time lying down) and previous statements during the course of routine examinations (of a much lower level of pain) deserve closer scrutiny.  In essence, the ALJ asserts that plaintiff never complained of the severity of pain to treating doctors that he testified to at the hearing.

In response, plaintiff does not deny he did not previously describe his pain to treating or examining physician to be as severe as he testified to at the agency hearing.  He merely states that his failure to report his level of pain to doctors "shows nothing other than his stoicism."  (Doc. 12 at p. 8).  The Court finds this response unsatisfactory.  The fact plaintiff may not have rated his pain at 9 out of 10 before his hearing testimony does not, in and of itself, destroy his credibility.

However, as highlighted by defendant, in notes concerning a series of examinations conducted on plaintiff between May and October, 2003, plaintiff gave a much different assessment of his level of pain.  Plaintiff was specifically asked to indicate in examinations his level of pain on a scale of one to ten.  On four occasions, plaintiff rated his pain at 0 ("no pain").  On one occasion plaintiff rated his pain as 1 on a scale of ten.   (Doc.

13

6A at pp. 257, 264, 287, 291 and 317).  On two other occasions he characterized his pain as a 3 on a 10 scale.  (Id. at pp. 271, 274).  Once he indicated he experienced "occasional" pain at 4 on a 10 scale.  (Id. at p. 322).  Twice he characterized his pain as "occasional" and 5 on a scale of ten.  (Id. at pp. 267, 277).

These characterizations support the ALJ's conclusion that plaintiff never stated his pain to any medical professional at the level he testified to at the hearing.  As such, it provides support for the ALJ's conclusion that plaintiff's pain testimony lacks credibility because it contradicts his prior characterizations of his pain in treating documents from 2003. Not once during this period of treatment (May - October, 2003) did plaintiff characterize his pain as anything near 9 out of 10.

The Court further notes, and plaintiff does not dispute, that no treating physician has opined that plaintiff cannot work. Defendant notes that one treating physician, Dr. Brennan, stated that plaintiff was capable of light work.  This assessment was made in October, 2001, after plaintiff's claimed disability date (March 9, 2001).  (See Doc. 6A at p. 160).

Moisa requires that to discount plaintiff's pain testimony, the Agency must cite specific evidence and clear and convincing reasons for rejecting the pain testimony.  In light of the treatment notes cited above, the Court believes that the ALJ did not err in concluding that plaintiff's testimony, characterizing his pain as 9 on a 10 scale, requiring him to lie down for 4 hours during an 8 hour period, was not credible.  This fact, and the fact plaintiff can cite no conclusion from a treating or examining

physician to support his claim he is unable to work requires the Court to affirm the Agency decision to deny benefits.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Summary Judgment (Docs. 10, 11 and 12) is denied.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Docs. 18, 19 and 20) is granted.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in this matter accordingly.

DATED this 5th day of December, 2005.

Virginia A. Mathis
United States Magistrate Judge