1    WO

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8    Robert Robinson, Jr.,              )
                                        )
9                     Plaintiff,        )
                                        )
10                    v.                )    CV 04-2907 PHX VAM
                                        )
11   Jo Anne B. Barnhart,               )    ORDER
     Commissioner, Social Security      )
12   Administration,                    )
                                        )
13                    Defendant.        )
     _____)

14        Pending before the Court is plaintiff's "MOTION TO AMEND

15   JUDGMENT UNDER RULE 60(b)."  (Doc. 27).

16        Plaintiff asks for relief pursuant to Fed.R.Civ.P. 60(b) on

17   the basis that the Court's order affirming the ALJ's denial of

18   benefits is based on "mistake, inadvertance, or excusable

19   neglect."  (Doc. 27 at p. 2).  Specifically, plaintiff argues that

20   the Court denied relief based on the mistaken view that "this

21   'case turns upon plaintiff's credibility'" and upheld the ALJ's

22   decision "based entirely upon a finding that the ALJ did not err

23   in concluding that Plaintiff's testimony about the severity of his

24   pain was not credible."  (Id.).

25        Plaintiff contends that although "the Court was correct that

26   Plaintiff's credibility was key to this case ... the Court erred

27   in discussing *only* this issue."  (Id.) (emphasis in original).

28   Plaintiff states that two other issues were also raised which were

1  not considered by the Court, namely, "[1] the ALJ's reliance on

2  the opinion of nonexamining state agency physicians who did not

3  testify at the hearing ... and [2] the ALJ's conclusory finding

4  that Plaintiff's condition did not meet or equal criteria for a

5  presumptive disability at step three of the sequential evaluation

6  process." (Id. at p. 3).  In addition, plaintiff argues the Court

7  erred in upholding the ALJ's determination that plaintiff's pain

8  testimony was not credible because the Court erroneously cited

9  medical reports relating to pain suffered by plaintiff as a result

10  of foot surgery and/or treatment, while plaintiff's basis for

11  disability is predicated solely on injuries causing severe back,

12  neck and shoulder pain.  (Id. at p. 5).

13      In upholding the ALJ's denial of benefits, the Court noted

14  that no treating or examining physician "opined that plaintiff

15  cannot work" and observed that one treating physician, Dr.

16  Brennan, stated in October, 2001 (after plaintiff's claimed onset

17  of disability date of March 9, 2001), "that plaintiff was capable

18  of light work." (Doc. 25 at p. 14).  The Court also cited as a

19  basis for its decision "notes concerning a series of examinations

20  conducted on plaintiff between May and October, 2003, ... [in

21  which] plaintiff was specifically asked to indicate ... his level

22  of pain on a scale of one to ten." (Id. at p. 13).  On this

23  point, the Court noted that:

24      On four occasions, plaintiff rated his pain at 0 ("no
        pain").  On one occasion plaintiff rated his pain as 1
25      on a scale of ten. [Citation omitted].  On two other
        occasions he characterized his pain as a 3 on a scale
26      of ten. [Citation omitted].  Once he indicated he
        experienced "occasional" pain at 4 on a 10 scale.
27      [Citation omitted].  Twice he characterized his pain as

28                                 2

"occasional" and 5 on a scale of ten. [Citation omitted].

(Doc. 25 at pp. 13-14).

Upon re-examination, the Court believes it erred in citing most of these treatment notes because, with one exception, they refer to podiatric examinations conducted as follow-ups to treatment and surgery plaintiff received on his feet. (See Doc. 6A at pp. 257, 264, 267, 271, 274, 277, 287, and 291). It is clear from his hearing testimony and his summary judgment motion that plaintiff's claims of disability are predicated on allegations of severe back, neck and shoulder pain flowing from injuries to those areas of the body. (See Doc. 6A at pp. 464-72; Doc. 12). It is also clear that the ALJ's decision focused on plaintiff's claims of severe back, neck and shoulder pain when she determined these injuries and pain were not sufficiently credible to justify awarding disability benefits. (See Doc. 6A at p. 20).

Because the Court's reliance in upholding the ALJ's decision to deny benefits was predicated, in large part, on citation to treatment notes related foot injuries, the Court's determination on that basis was erroneous and plaintiff's request for Rule 60(b) relief will be granted. The Court will re-assess the issue of whether the ALJ was justified in finding plaintiff's pain testimony regarding injuries to his back, neck and shoulder not credible and denying benefits on that basis before considering plaintiff's other arguments for Rule 60(b) relief.

In its assessment of the credibility of plaintiff's pain testimony, the ALJ conceded plaintiff "has a history of treatment

3

for shoulder, neck and back pain." (Doc. 6A at p. 21).  The ALJ
further elaborated that plaintiff "has degenerative disc disease
of the lumbar spine with spondylosis, degenerative disc of the
cervical spine and stenosis, right rotator cuff tear status post
surgery (June 2001), ..., impairments that are 'severe' within the
meaning of the Regulations, ..." (Doc. 6A at p. 21).  However,
the ALJ concluded that the impairments were "not 'severe' enough
to meet or medically equal" the requirements necessary for a
finding of presumptively disabled at Step 3.  (Id.).  As a result,
the Court moved to assess plaintiff's ability to perform his past
relevant work (Step 4) and, if necessary, his ability to perform
any work (Step 5) to determine if he was disabled.

At the hearing, plaintiff testified his back pain was 9 on a
scale of 10 and that he could stand or sit for no more than 30-40
minutes at any one time.  Plaintiff states his pain from standing
or sitting means that in an 8 hour day he must lie down for 4
hours.  (Doc. 6A at pp. 465-66).  Plaintiff also testified he has
sharp, shooting pain that goes from his neck to his left shoulder.
He testified he lives with his niece who takes care of him and
that he can't get a drink on his own, can't cook (except to use
the microwave), can't do the dishes and hasn't driven since March,
2001.  (Id. at pp. 467-70).

In discounting plaintiff's pain testimony, the ALJ stated,
inter alia:

> ... [plaintiff's] allegations concerning his symptoms
> and limitations [are] lacking in credibility.  Although
> [he] testified to a reduced range of activities, as
> well as debilitating episodes of pain, the documentary
> evidence nevertheless establishes [plaintiff] has

4

> overstated his limitations.  His statements concerning
> his impairments and the impact upon his ability to work
> are not entirely credible in light of the degree of
> medical treatment required, the reports of treating
> practitioners, the medical history, findings made on
> examination and information reported by [plaintiff].

(Doc. 6A at p. 24).

The ALJ also noted that relative to plaintiff's claims of "severe and chronic pain" in his neck, lower back, shoulder and arm, "[m]agnetic resonance imaging revealed a tear of the supraspinatus tendon and [plaintiff] underwent a right shoulder open rotator cuff repair ... with good results" and plaintiff "did not experience right shoulder problems following surgery." (Id.). The ALJ further observed that plaintiff's treating physician "allowed him to return to light duty work with the right arm with no lifting of over 20 pounds and no overhead activity with the right arm."  (Id.).

In addition, the ALJ noted plaintiff testified he "had severely limited his activities of daily living."  The ALJ cited two factors in discounting this claim, namely, (1) that plaintiff's claims of "limited daily activities cannot be objectively verified with any reasonable degree of certainty," and (2) "even if [plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitations to [his] medical condition, ..., in view of the relatively weak medical evidence ..."  (Doc. 6A at p. 26).  The ALJ also opined "even though [plaintiff] reports somewhat limited daily activities, his activity level is not that of a person unable to function due to pain" and noted his ability to do "light

1  household chores, go[ing] grocery shopping, and car[ing] for his

2  personal needs" which she found "inconsistent with the presence of

3  a condition which would preclude all work activity."  (Id.).

4  In addition, the ALJ cited plaintiff's inconsistent

5  statements on the level of his education as evidence of his

6  veracity.  She noted he testified at a hearing he completed tenth

7  grade and obtained a high school equivalency diploma but told one

8  treating physician he completed his high school education.  (Doc.

9  6A at p. 26).  The ALJ also noted a discrepancy between

10  plaintiff's characterization of his pain at the hearing as 9 on a

11  10 scale, when "he failed to even mention pain during many medical

12  appointments" and "the record contains a statement from one of

13  [his] doctors releasing [him] to return to light duty work."

14  (Id.).

15  The ALJ concluded the credibility assessment by finding

16  plaintiff's hearing testimony "inconsistent with the record as a

17  whole," observing that "treating physicians do not note overt

18  signs of pain during their examinations and there is no evidence

19  that [plaintiff] has experienced pain or limitations of the

20  severity he has alleged for a continuous 12 month time period."

21  (Doc. 6A at p. 26).  The ALJ summed up by stating that

22  "[o]bjective findings show the ability to perform at least a

23  significant range of light work with additional limitations."

24  (Id.).

25  The standard to evaluate the ALJ's assessment of plaintiff's

26  credibility as to his pain, is laid out in Moisa v. Barnhart, 367

27  F.3d 882 (9th Cir. 2004).  In pertinent part, the Court stated:

28  6

"[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." If the ALJ finds claimant's pain testimony not to be credible, the ALJ "must specifically make findings that support this conclusion," and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *If there is no affirmative evidence that claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms.*

Moisa, 367 F.3d at 885 (emphasis added).

As noted, in upholding the ALJ's credibility determination, the Court cited, prominently, a series of treatment notes which were not relevant to the maladies plaintiff stated were the cause of disability (severe pain from chronic injuries to the neck, shoulder and back). The Court also cited a written statement from a treating physician, Dr. Michael Brennan, M.D., that plaintiff could perform "light work." (Doc. 6A at p. 160). The Court further noted that no treating physician opined specifically that plaintiff was unable to work. (See Doc. 25 at p. 14).

As stated, the Court's reliance on the treatment notes cited in its original decision was mistaken. As noted, all these notes, save one, relate to pain assessments made as follow-up examinations to foot surgery. They in no way deal, or were meant to deal with, plaintiff's back, neck and shoulder pain, the pain he claims renders him disabled.

Upon re-assessment, the Court believes that given the objective evidence of an underlying impairment, noted by the ALJ

7

in her Step 3 evaluation, the ALJ's determination that plaintiff's claims of pain were not credible was not supported with sufficient specificity, nor did she provide the requisite "clear and convincing reasons" for rejecting his pain testimony.

Closer review of the medical records shows plaintiff did complain of severe pain with regard to his neck, shoulder and/or back on several occasions over a substantial period of time. Plaintiff had neck surgery in 1995. (Doc. 6A at pp. 137-38). For instance, in a disability report filed with the Social Security Administration in September, 1996, plaintiff complained of neck, back and shoulder pain. He stated this pain forced him to leave his job as a nursing assistant and bothered him so much he got sick "all the time." (Doc. 6A at p. 66). In a "Symptom Questionnaire to Claimant" filed by plaintiff in October, 1996, with the Arizona Department of Economic Security, he again cited pain in his back, neck and shoulder. He described the pain as "sharp" affecting him when he walks, stands or bends. (Id. at p. 88). Petitioner states this pain is brought on when he has to stand for more than 10 minutes or when walking more than 4 or 5 steps or when he has to bend over. (Id.). He stated the pain continues until he lies down. (Id.). Plaintiff chronicled the same injuries and same pain in later disability reports and symptom questionnaires filed in 2002. (See id. at pp. 90-99; 109-10).

The Court has re-examined the medical records in detail, particularly those relating to treatment for back, neck and shoulder pain. Since at least 1995, plaintiff has visited

physicians complaining of substantial lower back pain and/or neck and shoulder pain.  These complaints are documented in separate examinations conducted in 1996 by Drs. Paul Geimer, D.O. and Dr. Kirk Williams, M.D., respectively.  (See Doc. 6A at pp. 147-48 and 149-52).  Both noted plaintiff complained of severe back pain but neither opined about whether plaintiff could work or not because of it.

Since March 9, 2001 (the disability onset date), plaintiff has been examined by several physicians concerning his back, neck and/or shoulder pain.  From April-September, 2001, petitioner was examined on several occasions by Dr. Michael Brennan, M.D.  Dr. Brennan's observations and analysis appear confined to the effects of surgery on plaintiff's right shoulder.  (See Doc. 6A at pp. 159-69).  During this period, Dr. Brennan noted steady improvement in his shoulder and in notes dated August 16, 2001, stated he believed plaintiff could return "to light-duty with the right arm." (Id. at p. 160).  It is clear that Dr. Brennan confined his assessment of plaintiff's ability to work to the limitations imposed as a result of the right shoulder surgery.

Records from a treating physical therapist with NovaCare from April 17, 2001, show plaintiff made three visits for treatment of low back pain/neck pain/right shoulder pain.  (Doc. 6A at pp. 156-58).  The physical therapist noted plaintiff complained of "an onset of complaints gradually from the end of February through the beginning of March 2001" as a result of his most recent job as a truck driver.  (Id. at p. 157).  The therapist noted complaints of "shoulder pain, neck pain,

bilateral/central low back pain and intermitted LE pain" and he
stated an x-ray revealed a compression fracture of the first
lumbar vertebrae.  (Id.).  The therapist also noted plaintiff
claimed "a limited ability to stand or walk for periods longer
than 5-10 minutes secondary to severe complaints of pain." (Id.).

Plaintiff was also examined on several occasions between 1995
and 2001 by Dr. Lewis J. Brown, M.D.  In particular, Dr. Brown
examined plaintiff in April, 2001 and again in September, 2001
(after the alleged onset of disability date of March 9, 2001).  In
the April 30, 2001 "progress notes," Dr. Brown wrote about
plaintiff's back and shoulder pain.  He noted plaintiff was last
seen in January, 2000 for low back problems.  He further noted
"plaintiff continues to have low back pain aggravated by sitting
or standing" and had not worked since March, 2001 (the alleged
time of onset of disability).  Dr. Brown also recounted that in
addition to the back pain plaintiff's most pronounced pain was in
his right shoulder which "is very painful with active and passive
movement." (Doc. 6A at p. 172).  Dr. Brown stated that plaintiff
was informed that x-rays were taken but they were normal.  (Id.).
Dr. Brown did conclude, however, that plaintiff's intense shoulder
pain was causing "frozen shoulder syndrome" to develop.  (Id. at
p. 173).

In his September 13, 2001, "progress notes," Dr. Brown again
noted plaintiff suffered great pain from his right shoulder and
had an "intention tremor" which caused him to have to use his left
hand to do "most things" like handling liquids and driving.  (Doc.
6A at p. 170).  Dr. Brown also noted plaintiff's continuing back

pain which had been worsened by a truck driving job which he began
in November, 2000.  (Id.).

Plaintiff also was examined in 2002 by doctors with MedPro
Orthopedics.  (Doc. 6A at pp. 190-93).  They noted plaintiff's
complaints of back and shoulder pain and prescribed a plan of
treatment, including epidurals.  (Id.).  These doctors did not
opine on plaintiff's ability to work or not work but noted he had
received steady treatment for these problems since 1995 and had
not worked since March, 2001.  (Id. at p. 191).

Finally, medical records from the Phoenix Indian Medical
Center from late-2002 to March, 2004, show plaintiff was seen on
several occasions.  Examinations relating specifically to claims
of back/shoulder/neck pain during this period document that
plaintiff characterized his pain as substantial in each instance.
(Doc. 6A at pp. 316, 319, 333-35, 386, 399-400).

Based on the ALJ's finding that plaintiff's suffers from
"severe" maladies capable of causing pain in his back, neck and
shoulder, as well as plaintiff's well-documented complaints of
intense pain in these areas of the body and a lack of any finding
of malingering by the ALJ, plaintiff's pain complaints should be
credited unless the ALJ presents "clear and convincing" evidence
for not doing so.  See Moisa, 367 F.3d 885.  The Court believes
that the ALJ has failed to meet this standard.

The ALJ cited inconsistencies about plaintiff's
characterization of his level of education as an example of why he
is not credible.  The Court is not convinced.  The discrepancy is
between a claim of being a high school graduate and a high school

11

equivalency graduate.  This difference is negligble and is not persuasive evidence of a lack of credibility.

In addition, the ALJ cited the opinion of Dr. Brennan in April, 2001, that plaintiff could perform "light work."  A close look at this statement reveals Dr. Brennan was assessing only plaintiff's shoulder injury.  Dr. Brennan did not speak to plaintiff's back and neck pain.  Thus, this conclusion is not conclusive and, without more, is not "clear and convincing" evidence supporting a conclusion that plaintiff lacks credibility as to his level of pain.

Next, the ALJ merely asserts that plaintiff's claimed level of pain "is so severe as to appear implausible." (Doc 6A at p. 26).  She follows this by again reiterating her belief that his level of claimed pain is "inconsistent with the record as a whole."  (Id.).  Perhaps the ALJ also mistakenly relied on podiatric medical records.  No examining doctor has specifically concluded plaintiff cannot work due to pain from his neck, back and shoulder.  But no examining doctor has concluded he can work, save for Dr. Brennan's statement in April, 2001, that his shoulder impairment did not prevent his return to "light work."

Conversely, the only professionals to opine plaintiff can work are non-examining agency professionals.  (See Doc. 6A at pp. 194-201, 238-45).  This alone, is insufficient to discount plaintiff's claims of pain testimony.  Indeed, the Court believes the medical record shows consistent claims by plaintiff of debilitating back, neck and shoulder pain over several years up through and beyond the date of onset of disability (March 9,

2001).  These records are consistent with his hearing testimony.
The reasons cited for discounting this pain testimony do not rise
to the "clear and convincing" standard required by <u>Moisa</u>, in light
of the ALJ's finding that plaintiff suffers from severe
impairments and has no history of malingering.  For these reasons,
the ALJ erred in discounting plaintiff's pain testimony.  Both
parties and the ALJ concede that if plaintiff's pain testimony is
credited he is disabled and entitled to benefits.  (See Doc. 6A at
p. 479).  For this reason, no purpose will be served by remanding
to the Agency for anything other than an award of benefits.  <u>See</u>
<u>Benecke v. Barnhart</u>, 379 F.3 587, 594-96 (9th Cir. 2004).

Because the Court believes it erred in assessing evidence in
support of the ALJ's finding that plaintiff's pain testimony was
not credible and now finds that plaintiff's pain testimony should
be credited and benefits awarded on that basis, the Court will not
address the issues of whether it erred in not considering
plaintiff's additional claims related to the ALJ's reliance on
nonexamining professionals and the claim that the ALJ erred in
making only a conclusory assessment of whether plaintiff's
impairments met or exceeded the requirements for a finding of
presumptively disabled at Step 3 of the sequential evaluation
process.  (<u>See</u> Doc. 27 at p. 4).

**IT IS THEREFORE ORDERED** that plaintiff's "MOTION TO AMEND
JUDGMENT UNDER RULE 60(b)" based on mistake and/or inadvertence
(Doc. 27) is granted.

**IT IS FURTHER ORDERED** that the Court's prior Order granting
defendant's Cross-motion for Summary Judgment (Doc. 25) is

13

1 | vacated.

2 |     **IT IS FURTHER ORDERED** that plaintiff's Motion for Summary

3 | Judgment (Docs. 10,11 and 12) is granted.  This matter shall be

4 | remanded to the Social Security Administration for an award of

5 | benefits.

6 |     **IT IS FURTHER ORDERED** that the Clerk of Court shall enter

7 | judgment in this matter accordingly.

8 |     DATED this 10th day of March, 2006.

*Virginia A. Mathis*

Virginia A. Mathis
United States Magistrate Judge

14